213 N.J. Super. 524 (1986)
517 A.2d 1199
TOWNSHIP OF BERKELEY, PLAINTIFF-APPELLANT,
v.
BERKELEY SHORE WATER CO.; BLOCK 882, LOT 34, ASSESSED TO PINEVIEW, LTD., ET AL., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1986.
Decided October 29, 1986.
*526 Before Judges PETRELLA and SCALERA.
John Tassini argued the cause for appellant (Russo, Courtney, Foster, Secare, Tassini & Ford, attorneys; Joseph L. Foster on the brief).
Edward T. Feurey argued the cause for respondent (Paschon, Feurey & Rosetto, attorneys).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
The sole issue raised on this appeal by the Township of Berkeley is whether the Chancery Division Judge erred in his application of the holding in Montville Township v. Block 69, et al, 74 N.J. 1 (1977) and R. 4:64-7(c) in setting aside an in rem tax foreclosure judgment against property owned by Pineview, Ltd. (Pineview) in Berkeley Township as violative of due process principles.
The matter was heard by the Chancery Judge on the adjourned return date of an order to show cause which sought relief from the tax sale certificate foreclosure which had been brought by the Township against numerous properties, including the subject property which is listed on the tax maps as Block 882, Lot 34. The case was decided on the basis of *527 affidavits submitted, as well as testimony of a witness presented by Pineview who had been the secretary to one of the partners of Pineview.
Pineview was a partnership consisting of three individuals, one of whom was Albert Manganelli who was responsible for sending the checks in payment of the tax bills for various properties owned by the partnership. The partnership not only owned the 9.46-acre tract known as Block 882, Lot 34, but additional property in Berkeley Township known as Block 857, Lots 11A and 11B.
Pineview's offices were and are located in Fort Lee, New Jersey. Around May 1978 Pineview moved its offices from 1224 Anderson Avenue in Fort Lee to 1068 Anderson Avenue in the same municipality. At that time the address of 1224 Anderson Avenue appeared on the tax bills for all of these parcels of property. Despite a somewhat contrary affidavit from the tax collector stating that the entire 1978 tax remained unpaid, the record contains a receipted tax bill which indicates that the first half 1978 preliminary tax for Lot 34 was paid on May 16, 1978. An exhibit showed that the 1977 tax for the 9.46 acres represented by Lot 34 was $1,339.45.
Antoinette Costanzo testified that she had worked for the partnership as a secretary for Mr. Manganelli during the years 1977 through 1979, and that she prepared and sent a May 30, 1978 letter to the tax collector of the Township of Berkeley which reads as follows:
 May 30, 1978
 Township of Berkeley,
 Tax Collector, Town Hall
 Rt. 9
 Bayville, N.J. 08721
 RE: Property  Block 882
 Lot 34
 9  9.46 AC
Gentlemen:
Please be advised that effective immediately you are to mail all tax bills and information related thereto to our new address:
*528
 Pineview Limited
 c/o Albert A. Manganelli
 1068 Anderson Avenue
 Fort Lee, N.J. 07024
Copy of tax bill is enclosed for your reference.
 Very truly yours,
 ALBERT A. MANGANELLI
 For the Firm
 AAM:ac
 Enclo.
There was also testimony and evidence that around the same time Pineview notified the Fort Lee post office and various other entities, including various banks, of its change of address.
Costanzo testified that thereafter the partnership began receiving tax bills at its new address for Lots 11A and 11B in Block 857, but did not receive a tax bill for the property known as Lot 34. Because of this she telephoned the Township tax collector's office toward the end of 1978 and spoke to a woman about the fact that a bill had not been received for Lot 34. According to Costanzo the woman told her that the Township would clear up the matter and forward a new tax bill to the partnership's new address. During this time she also checked with the Fort Lee post office to see if mail had been sent to the old address and returned; she was told that none had.
A tax foreclosure action was brought in 1982 against various pieces of property, including Block 882. There is no dispute that Pineview did not receive a copy of the summons or complaint. A certified mail receipt for an envelope containing the notice of foreclosure and addressed to 1224 Anderson Avenue was apparently postmarked March 24, 1982. The acknowledgment of receipt card, filed on May 21, 1982 with the "Affidavit of Mailing of Notice," was returned undelivered and marked "unknown" on the "date of delivery" line. The judgment of foreclosure was entered on May 21, 1982.
According to an affidavit filed by Manganelli in connection with the action to vacate the foreclosure judgment, notice of the foreclosure or a copy of the foreclosure complaint was *529 never received. His affidavit asserted that he did not discover that the subject property had been involved in the foreclosure action until August 25, 1985. He had erroneously assumed that the checks sent to pay the tax bills for lots 11A and 11B had also included payment for Lot 34.
An affidavit of the tax collector indicated that no taxes had been paid on Lot 34 for the years 1978 through 1981 and to January 7, 1986, the date of her affidavit. She also noted that in December 1981 she attempted, by mail sent to the 1224 Anderson Avenue address, to request that Pineview return its tax bill for adjustment based on a valuation change ordered by the Ocean County Board of Taxation, but that the envelope was returned marked "Return to Sender. Attempted  Not Known."
The Township submitted an affidavit of a principal tax clerk in the tax collector's office which stated that she examined the files relating to Lot 34 along with the general correspondence files. According to her, "that examination failed to disclose any correspondence received from Pineview, Ltd. on behalf of Pineview, Ltd., addressed to the Tax Collector of the Township of Berkeley advising the Tax Collector of a change of address for Pineview, Ltd." Notwithstanding the fact that no correspondence could be found from Pineview, it was obvious, and undisputed, that a change of address had been noted with respect to Lots 11A and 11B in Block 857. Apparently correspondence relating to that change of address also could not be found.
Judge Wiley concluded that the taxpayer had taken reasonable steps to notify the township of its change of address, and that thereafter it was the obligation of the township to see that the tax bills and notices were sent to the correct address. The judge concluded that the municipality had failed to comply with due process requirements and accordingly in a January 12, 1986 order, vacated the foreclosure judgment as to Lot 34, conditioned *530 on payment of back taxes from July 1, 1978 through the first quarter of 1986, plus interest.
The municipality argues that we should consider the failure of Pineview, the taxpayer, to pay taxes for at least a portion of 1978 and from 1979 through 1981, as indicating that it was on notice that tax bills had not been received and that this imposed an obligation on the taxpayer to do more than simply allow the taxes to fall into arrearages on the particular property involved. The township argues that it had satisfied its own obligation to the taxpayer by mailing the notice to the last known address shown on the municipal tax records. In this latter argument it relies on Atlantic City v. Block C-11, Lot 11, 74 N.J. 34, 39-40 (1977), decided the same day as Montville v. Block 69, Lot 10, which indicated that the municipality is under no affirmative duty to ascertain whether the name and address listed on the tax rolls is correct. The case on appeal presents a different factual setting than that in Atlantic City. The taxpayer in that case made no effort, reasonable or otherwise, to notify the taxing authorities of her changed status as a property holder. She proposed to place the burden of ascertaining her correct address on the tax collector. Atlantic City, supra at 39-40. In the instant case Pineview makes no such claim. It argues that it did all that it could reasonably be expected to do to satisfy its obligation under Atlantic City by providing the township with adequate notice by mail and telephone.
Judge Wiley found that Pineview had mailed notice of the change of address to the tax collector's office and that there had been telephone calls from Pineview to that office regarding the change of address and the failure to receive a tax bill for Lot 34. Indeed, even though the tax collector's office had submitted affidavits stating that there were no records of any communications from Pineview in the tax office files, the tax office had apparently changed Pineview's address on the other lots owned by the taxpayer. The affidavit did not go so far as to affirmatively state that no notice had ever actually *531 been received. Rather, the assertion of no notice was based on lack of a current record thereof. See Evid. R. 63(14).[1] However, evidence that taxes had been paid in part for a year in which the municipality claimed there had been no taxes paid served to weaken the probative value of the absence of a record of address notification.
In Montville v. Block 69, Lot 10, supra (74 N.J. 1), the issue of the sufficiency of notice required in a municipal in rem tax foreclosure act proceeding was considered. The court held that certain minimal levels of due process were required and that both under State and Federal law, where an owner's name and address appeared on the municipal tax rolls, notice must be sent by mail before a taxpayer's rights in his property may be extinguished by foreclosure. Id. at 19-20.
After this decision was announced N.J.S.A. 54:5-104.29, et seq. was amended, as was the implementing rule of court. The pertinent portion of R. 4:64-7(c) requires service of a copy of the notice of foreclosure:
On each person whose name appears as an owner in the tax foreclosure list at his last known address as it appears on the last municipal tax duplicate. The plaintiff shall also make such service upon all other persons who, pursuant to N.J.S.A. 54:5-104.48, as amended, have filed a notice with the tax collector specifying a title, lien, claim or interest in any of the land sought to be affected by said complaint....
In our view the township's reading of Montville, supra and Atlantic City, supra, is too narrow. The principle evident from those cases is that the notice requirements of the In Rem *532 Tax Foreclosure Act must comply with due process, and that notice is constitutionally deficient where it is not directed to known persons in interest in the property to be foreclosed. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Twp. of Montville v. Block 69, Lot 10, supra (74 N.J. at 7-8). We should also consider that a principal purpose of the in rem tax foreclosure law is to provide a method for collection of taxes, rather than being a primary tool to divest taxpayers of their property. Cf. Lonsk v. Pennefather, 168 N.J. Super. 178, 182 (App.Div. 1979), certif. den. 82 N.J. 285 (1980); Merewood, Inc. v. Denshaw, 139 N.J. Eq. 182, 184 (Ch. 1947); Tracy v. County of Chester, Tax Claim Bureau, 507 Pa. 288, 297, 489 A.2d 1334 (1985). The latter is only a consequence of the failure to pay the taxes.
Judge Wiley found here that the taxpayer had given written and telephonic notice to the tax collector, notwithstanding the failure of that office to note the change of address with respect to the tax records for Lot 34. It then became the burden of the tax office to take reasonable steps to correct the address of record so that tax bills and notices can be sent to the proper address. See Long Beach Township v. Lot 3, Block 9, 189 N.J. Super. 116, 122 (Ch.Div. 1983).
In Brick Township v. Block 48-7; Lots 34, 35, 36, 202 N.J. Super. 246 (App.Div. 1985),[2] we were confronted with a situation where the township had mailed notice of foreclosure to one of the owner-partners listed on the tax duplicate at the address of his former law office. The property owner had moved his office without notifying the tax collector of his change of address and the foreclosure complaint was returned as undeliverable. The township took no other steps to effect service, although it was alleged that local officials knew of the address change and failed to take the steps necessary to effect proper service. Id. at 249.
*533 Although we noted in Brick Township that the use of certified mail to the last known address on the tax roll satisfied Montville's requirements, we concluded that a different situation would be present if there was actual knowledge of the change of address. We held that if the municipality's agent in charge of the mailing had actual notice of the address change, the municipality might be required to mail the notice to the new address of the owner even though that address did not appear on the tax records.[3] Hence, we remanded for a hearing on that issue.
Where the taxpayer makes reasonable efforts to notify the taxing authority of the correct address, and the taxing authority fails or neglects to change its records, the taxpayer has exercised reasonable compliance with its obligation to notify the taxing authority of the correct address. Notwithstanding that a municipality need not verify the addresses on its tax records, where it is established that the taxpayer has made reasonable efforts or taken reasonable steps to notify the municipality, then the burden shifts to the taxing authorities to *534 change their records to reflect the new address even where a notice mailed to the taxpayer at the address shown on the tax records has been returned as undeliverable. The taxing authority must then show that it took reasonable steps to effectuate notice.
Here, the Chancery Judge found that the taxpayer had factually established that the new address had been communicated in 1978 to the tax officials in the municipality. This satisfied the taxpayer's obligation to keep taxing authorities informed of his interest in the land and his current address. N.J.S.A. 54:5-104.48. See also Long v. Dillon, 679 P.2d 772 (Mont. 1984); Appeal of Pinto, 72 Pa.Commw. 218, 455 A.2d 1294, 1296 (Commw.Ct. 1983).
We are satisfied that under the circumstances the judgment of foreclosure was properly set aside as to Lot 34.
Affirmed.
NOTES
[1] Aside from the fact that there was no opportunity to cross-examine the affidavit because of the agreed manner in which the case was presented, we note that the affidavit did not fully comply with the requirements of Evid.R. 63(14). To prove nonoccurence of an act by the absence of an entry in business records, it must be shown that "it was the regular practice of the business to make such a memorandum or record of all such acts, events, or conditions at the time thereof or within a reasonable time thereafter, and to preserve it." Ibid. See State v. Antiere, 186 N.J. Super. 20, 24 (App.Div. 1982), certif. den. 91 N.J. 546 (1982). The affidavit only refers to an examination of files which "would have been maintained in the normal course of business."
[2] Appeal after remand, 210 N.J. Super. 481 (App.Div. 1986).
[3] Other jurisdictions, while adopting a position similar to that in Atlantic City, have also recognized that a municipality's obligations are not satisfied simply by mailing notice to the address listed on the tax rolls if the taxing authority has knowledge of a changed address or the taxpayer has made reasonable efforts to transmit that information to the taxing authority. For example, Pennsylvania adopts the Atlantic City view. Kleinberger v. Tax Claim Bureau of Lehigh County, 64 Pa.Commw. 30, 438 A.2d 1045 (Commw.Ct. 1982). It also recognizes various exceptions to the rule where the taxing authority has been advised of an address change. See Tracy v. County of Chester, Tax Claim Bureau, 507 Pa. 288, 489 A.2d 1334 (Pa. 1985) (Return as undeliverable of mailed notice of foreclosure is sufficient notice of inaccurate address); Appeal of Plank, 69 Pa.Commw. 442, 451 A.2d 793 (Commw.Ct. 1982) (written note to tax collector and circled address change in red on remitted check sufficient notice of address change); Return of Tax Sale, etc. v. Clawson, 39 Pa.Commw. 492, 395 A.2d 703, 705-706 (Commw.Ct. 1979) (telephone notice, payment of subsequent taxes, and new address notation on check sufficient). Although the taxing authorities are under special obligation to take notice of address changes sent to them, they are not required to do the impossible. See Appeal of Pinto, 72 Pa.Commw. 218, 455 A.2d 1294 (Commw.Ct. 1983) (New return address on envelope mailed to tax collector is insufficient notice of an address change).